UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NICKKI PIERRE CHARLES,

     Petitioner,

v.                                      Case No.  6:21-cv-781-PGB-EJK

ATTORNEY GENERAL, et al.,

     Respondents.

_____/

**ORDER**

This cause is before the Court on Petitioner Nickki Pierre Charles's Amended Petition for Writ of Habeas Corpus ("Petition," Doc. 16), filed pursuant to 28 U.S.C. § 2254. Respondents filed a Response to the Amended Petition ("Response," Doc. 23) in compliance with this Court's instructions. Petitioner filed a Reply. ("Reply," Doc. 25).

Petitioner alleges ten grounds for relief. For the reasons that follow, the Amended Petition is denied.

## I.  Procedural History

Petitioner was charged by Information with robbery with a firearm (Count One), in violation of Florida Statutes Sections 812.13(2)(a), 812.131, and 775.087(2), and resisting an officer with violence, in violation of Florida Statutes Section 843.01. (Doc. 18-1 at 171).

A jury trial was held in August 2014, and the jury found Petitioner guilty as charged on Count One (robbery with a firearm) and guilty of resisting a law enforcement officer without violence (a lesser included offense) on Count Two. (Doc. 18-1 at 246–47). Petitioner was sentenced to concurrent terms of twenty years' imprisonment (ten years minimum mandatory) on Count One and 364 days' imprisonment on Count Two. (Doc. 18-1 at 250–56).

Petitioner appealed. Counsel filed an *Anders*[1] brief and a motion to withdraw (Doc. 18-1 at 710–31), and Petitioner filed a *pro se* brief (Doc. 18-1 at 738–54). On April 7, 2015, Florida's Fifth District Court of Appeal ("Fifth DCA") affirmed Petitioner's convictions and sentences, *per curiam* (Doc. 18-1 at 760), *Charles v. State*, 162 So. 3d 1031 (Fla. 5th DCA 2015) (table), and permitted counsel to withdraw. (Doc. 18-1 at 762).

On August 12, 2015,[2] Petitioner moved for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure. (Doc. 18-1 at 849–80). The motion was

---

[1] In *Anders v. California*, 386 U.S. 738, 744 (1967), the Supreme Court set forth the procedure for court-appointed counsel to pursue an appeal requested by his client when counsel has determined there is no merit to the appeal.

[2] This is the filing date under the "mailbox rule." *See e.g.*, *Williams v. McNeil*, 557 F.3d 1287, 1290 (11th Cir. 2009) ("Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." (citing Fed. R. App. P. 4(c); *Houston v. Lack*, 487 U.S. 266, 275–76 (1988)); *Thompson v. State*, 761 So. 2d 324, 326 (Fla. 2000) ("[W]e will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of the prison or jail officials for mailing on a particular date, if that the [sic] pleading would be timely filed if it had been received and

2

dismissed without prejudice on November 18, 2015, for failure to include a proper oath. (Doc. 18-1 at 956–57). Petitioner filed an amended motion for post-conviction relief on December 17, 2015 (Doc. 18-1 at 959–92), which was dismissed as facially deficient (Doc. 18-1 at 1060).

On February 12, 2016, Petitioner filed a second amended Rule 3.850 motion. (Doc. 18-1 at 1062–94). The post-conviction court summarily denied grounds seven, eleven, and part of ground six; ordered an evidentiary hearing on grounds one through five, the rest of ground six, and grounds eight and nine; and reserved ruling on ground ten. (Doc. 18-1 at 1587–94). Following the evidentiary hearing, the post-conviction court orally denied the remainder of the second amended Rule 3.850 motion and then entered a written order denying the motion. (Doc. 18-1 at 832–40, 1650). Petitioner appealed. (Doc. 18-1 at 1657–90). On May 10, 2019, the Fifth DCA remanded for the post-conviction court to rule on grounds five and ten and otherwise affirmed the denial of the second amended motion for post-conviction relief. (Doc. 18-1 at 1748); *Charles v. State*, 273 So. 3d 210 (Fla. 5th DCA 2019). Mandate issued on June 6, 2019. (Doc. 18-1 at 1747).

On August 1, 2019, the post-conviction court entered a written order denying grounds five and ten. (Doc. 18-1 at 1750–52). Petitioner appealed (Doc. 18-

---

file-stamped by the Court on that particular date.”). Unless otherwise noted, dates referenced for Petitioner's filings are the filing dates according to the mailbox rule.

1 at 1759–69), and the Fifth DCA affirmed the denials, *per curiam*, on September 22,

2020. (Doc. 18-1 at 1799); *Charles v. State*, 308 So. 3d 627 (Fla. 5th DCA 2020) (table).

Mandate issued on October 16, 2020. (Doc. 18-1 at 1801).

Petitioner filed the federal Section 2254 Petition (Doc. 1) that initiated this

action on May 3, 2021. On November 22, 2021, which was after the Court directed

Respondents to respond to the Petition, Petitioner filed the Amended Petition.

(Doc. 16). Although Petitioner did not request leave to amend, the Court permits

the amendment in the interest of justice. Upon review, because the Court can

resolve the Petition on the basis of the record, an evidentiary hearing is not

warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

## II.   Timeliness of the Amended Petition, Specifically as to Grounds Three, Six, Seven, Eight, and Ten

### A. Legal Standard

Pursuant to 28 U.S.C. § 2244:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is

removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C § 2254(d)(1)–(2).

### B. Analysis

The Fifth DCA affirmed Petitioner's conviction on April 7, 2015. Petitioner then had ninety days, or through Monday, July 6, 2015, to petition the Supreme Court of the United States for a writ of certiorari. *See* Sup. Ct. R. 13(3) (the 90-day period commences upon the date of entry of order, not the mandate); *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002) (holding that the one-year period of limitation does not begin to run until the ninety-day period for filing a petition for certiorari with the Supreme Court of the United States has expired).

Thus, under Section 2244(d)(1)(A), the judgment of conviction became final on Monday, July 6, 2015. The limitations period began running on Tuesday, July

7, 2015, and Petitioner had through Thursday, July 7, 2016, absent any tolling, to file a federal habeas corpus petition. *See San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (applying Fed. R. Civ. P. 6(a)(1) in computing the AEDPA's one-year limitation period to run from the day after the day of the event that triggers the period); *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (AEDPA's one year "limitations period should be calculated according to the 'anniversary method,' under which the limitations period expires on the anniversary of the date it began to run.") (citing *Ferreira v. Sec'y Dep't of Corr.*, 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).

The limitations period tolls during the pendency of a properly filed application for State post-conviction or other collateral review. 28 U.S.C. § 2244(d)(2). Thus, the AEDPA statute of limitations began running on Tuesday, July 7, 2015, and ran for 36 days to, but not including, August 12, 2015, the date Petitioner filed his Rule 3.850 motion. The limitations period was tolled through October 16, 2020, the date the mandate issued following Petitioner's second appeal from the denial of his Rule 3.850 motion.

The AEDPA limitations period began running again on October 17, 2020, and ran for 198 days to, but not including, May 3, 2021, the date Petitioner filed the original federal Section 2254 Petition in this action. At that time, 234 days of

untolled time had elapsed and Petitioner had 131 days remaining on the AEDPA statute of limitations. Thus, Petitioner's original Petition was timely filed.

While the limitations period tolls during the pendency of a properly filed application for State post-conviction or other collateral review, the limitations period does *not* toll during the pendency of a federal habeas action. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). Consequently, the limitations period continued running for another 203 days from and including May 3, 2021, to, but not including, November 22, 2021, the date Petitioner filed the Amended Petition in this case. Thus, by the time Petitioner filed the Amended Petition, a total of 437 days of untolled time elapsed, making the Amended Petition untimely by 72 days.

Because Petitioner filed the Amended Petition after the expiration of the statute of limitations, the claims[3] contained in the Amended Petition are time-barred unless they "relate back" to the original Petition under Rule 15(c), Federal Rules of Civil Procedure.[4] *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). " 'Relation back' causes an otherwise untimely claim to be

---

[3] The Court must consider the timeliness of each claim rather than the timeliness of the Amended Petition as a whole. *See Zack v. Tucker*, 704 F.3d 917 (11th Cir. 2013).

[4] Petitioner does not contend that the limitations period should run from some date other than the date the convictions became final, *see* Section 2244(d)(1), nor does he argue the application of equitable tolling or assert any other argument that could overcome the time bar.

7

considered timely by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c)(1). "[T]he untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344. "Instead, in order to relate back, the untimely claim must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type." *Id*.

The following are the claims raised in the timely-filed original Petition:

- **Ground One:** Ineffective assistance of counsel for failure to assert a misidentification defense and request a related instruction. (Doc. 1 at 6–7).

- **Ground Two:** Ineffective assistance of counsel for "fail to suppress an out-of-court identification" by the victim. (Doc. 1 at 9–10).

- **Ground Three:** Ineffective assistance of counsel for "fail[ure] to object to improper comments and move for mistrial. (Doc. 1 at 11).

- **Ground Four:** Ineffective assistance of counsel for "making irrelevant and prejudice[ial] comments." (Doc. 1 at 13).

- **Ground Five:** Ineffective assistance of counsel for failing to fulfill a promise, made during the opening statement, to introduce the video of Petitioner's interview. (Doc. 1 at 17–18).

- **Ground Six:** "The state court applied an unreasonable application of *Strickland v. Washington* of his trial counsel ineffective assistance of counsel claim." (Doc. 1 at 20).

- **Ground Seven:** "The state court applied an unreasonable application of *Strickland v. Washington* of his trial counsel ineffective assistance of counsel claim." (Doc. 1 at 21).

- **Ground Eight:** "The state court applied an unreasonable application of *Strickland v. Washington* of his trial counsel ineffective assistance of counsel claim." (Doc. 1 at 23).

- **Ground Nine:** Ineffective assistance of counsel for "failing to advise [Petitioner] that testifying to certain alleged facts would have been 'in his best interest[]' " because the facts "would have established 'a viable defense.' " (Doc. 1 at 25–26).

- **Ground Ten:** Petitioner left Ground Ten blank. (Doc. 1 at 28).

- **Ground Eleven:** Ineffective assistance of counsel for "fail[ing] to object to the State's case being based upon improper stacking of inferences." (Doc. 1 at 29).

- **Ground Twelve:** "The state postconviction court denied Petitioner due process at his evidentiary hearing by denying him the appointment of counsel." (Doc. 1 at 31).

Respondents concede that Grounds One, Two, Four, Five, and Nine of the Amended Petition relate back to the original Petition and that those claims are, therefore, considered timely filed. (Doc. 23 at 10, n.3). Respondents argue,

however, that Grounds Three, Six, Seven, Eight, and Ten of the Amended Petition do not relate back to the original Petition and are, therefore, untimely.

In Ground Three of the Amended Petition, Petitioner challenges more than one allegedly improper comment by more than one witness, as well as a physical demonstration by one of the witnesses, and a comment by the prosecutor. (Doc. 16 at 13–14). However, in Ground Three of the original Petition, Petitioner claimed simply that "Counsel failed to object to improper comment and move for mistrial. The State applied an unreasonable application of *Strickland*." (Doc. 1 at 11). Petitioner alleged no further facts in Ground Three. He did not describe, for example, who made an improper comment, the nature of the improper comment, any prejudice stemming from the improper comment, or the basis for the desired motion for mistrial. Thus, the original Ground Three claim, given the complete absence of facts alleged, could have been based on any comment made by anyone during the trial.

The vagueness of the original Ground Three claim makes it impossible for the Court to conclude that the claims raised in Ground Three of the Amended Petition "have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings." *Davenport*, 217 F.3d at 1344. Further, the claims raised in Ground Three of the Amended Petition do

not arise from the same set of facts as any of the other claims raised in the original
Petition.

As the Court cannot determine that the multiple claims raised in Ground
Three of the Amended Petition are based on the same set of facts as the single claim
raised in Ground Three of the original Petition or as any other claim raised in the
original Petition, Ground Three of the Amended Petition does not relate back to
the original Petition.

Similarly, in Grounds Six, Seven, and Eight of the original Petition,
Petitioner alleged only that "the state court applied an unreasonable application
of *Strickland v. Washington* of his trial counsel ineffective assistance of counsel
claim." (Doc. 1 at 20, 21, 23). He did not describe any such claim or the facts
supporting any such claim. Petitioner left Ground Ten of the original Petition
completely blank. (Doc. 1 at 28).

Yet, in Ground Six of the Amended Petition, Petitioner claims counsel
should have "object[ed] to irrelevant and prejudicial evidence/comments" related
to "a grey hoodie sweatshirt, gym shorts, a firearm, and currency" and to certain
comments by various officers who testified at the trial. (Doc. 16 at 23–25). In
Ground Seven of the Amended Petition, Petitioner claims counsel erred by not
objecting to "the judge's comments and unreasonable rules." (Doc. 16 at 26–27). In
Ground Eight of the Amended Petition, Petitioner claims counsel erred by failing

11

to impeach the victim with a prior out-of-court statement. (Doc. 16 at 29–30). In Ground Ten of the Amended Petition, Petitioner argues that "counsel's cumulative errors, when considered in toto, amounted to ineffectiveness, regardless of whether [the errors] individually ris[e] to the level of a constitutional violation." (Doc. 16 at 35).

For the same reason as Ground Three above, the Court cannot find that Grounds Six, Seven, Eight, and Ten of the Amended Petition relate back to the same-numbered claims in the original Petition. Further, the claims raised in Grounds Six, Seven, Eight, and Ten of the Amended Petition do not arise from the same set of facts as any of the other claims raised in the original Petition. Consequently, Grounds Six, Seven, Eight, and Ten of the Amended Petition do not relate back to the original Petition.

Consequently, because Grounds Three, Six, Seven, Eight, and Ten of the Amended Petition do not relate back to the original Petition, they are untimely and are denied.

## III.   Remaining Claims — Grounds One, Two, Four, Five, and Nine

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act

Pursuant to the Antiterrorism Effective Death Penalty Act ("AEDPA"), a federal court may not grant federal habeas relief on a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
        determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
        State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses

only the holdings of the United States Supreme Court "as of the time of the

relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court

decisions; the 'contrary to' and 'unreasonable application' clauses articulate

independent considerations a federal court must consider." *Maharaj v. Sec'y for

Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was

discussed by the Eleventh Circuit in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir.

2001):

> Under the "contrary to" clause, a federal court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> United States Supreme Court] on a question of law or if the state court
> decides a case differently than [the United States Supreme Court] has
> on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal
> principle from [the United States Supreme Court's] decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Id.* (quoting Williams, 529 U.S. at 412–13). Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[5] *Id.* (quotation omitted).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." But, the state court's "determination of a factual issue . . . shall be presumed correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Parker*, 244 F.3d at 835–36.

## B. Ineffective Assistance of Counsel Standard

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person may have relief because his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the

---

[5] In considering the "unreasonable application inquiry," the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *see also Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to state court in determining whether the state court's decision was contrary to federal law).

defense. *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Analysis

### 1. Grounds One and Two

In Ground One, Petitioner contends counsel erred by failing to raise a misidentification defense. (Doc. 16 at 6–7). In Ground Two, Petitioner argues that counsel erred by failing to challenge or move to suppress the victim's out-of-court identification of Petitioner. (Doc. 16 at 9–10).

Petitioner raised these claims before the state court as the first two claims in his second amended Rule 3.850 motion (Doc. 18-1 at 1066–74), and the post-conviction court denied the claims after holding an evidentiary hearing. (Doc. 18-1 at 837–38, 1589, 1650). However, Petitioner did not raise these claims when he appealed the post-conviction court's denial. (*See* Doc. 18-1 at 1657–90).

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that — (A) the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 383, 845 (1999). "In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial." *Leonard v. Wainwright*,

601 F.2d 807, 808 (5th Cir. 1979).[6] A petitioner must file an appellate brief to appeal the denial of a post-conviction motion after an evidentiary hearing, and the brief must contain all claims that the petitioner desires to appeal. *See* Fla. R. App. P. 9.141(b)(3)(C); *Atwater v. Crosby*, 451 F.3d 799, 809–10 (11th Cir. 2006) (citing *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999)) ("Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing.").

Because Petitioner did not raise the claims now presented in Grounds One and Two when he appealed the denial of his second amended Rule 3.850 motion for post-conviction relief, he failed to fully exhaust — and has procedurally defaulted — those claims. As Petitioner asserts no cause and prejudice or the fundamental miscarriage of justice to overcome the default, Grounds One and Two are procedurally barred from federal habeas review and are denied. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.").

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

2. *Ground Four*

In Ground Four, Petitioner contends that counsel erred by "making irrelevant and prejudicial comments" at trial. (Doc. 16 at 16–17). He points to the following comments made by counsel during her opening statement:

> You will hear Mr. Pierre Charles' interview. He ran from the cops that night. He thought he missed a court date. He thought he had a warrant, even though he did not. He didn't know why the cops were there, but he didn't want to stick around to find out.

(Doc. 18-1 at 327). He explains that "counsel's strategy prior to trial was to exclude any collateral crime testimony or comments." (Doc. 16 at 17). Petitioner further explains that counsel even moved *in limine* to prohibit mention of collateral crimes involving Petitioner, and the State agreed "not . . . to elicit any testimony about [his] prior history or that he was a suspect." (Doc. 16 at 17). Nonetheless, the identified comments by counsel "showed the jury that Petitioner (1) has a prior crime, (2) . . . thought that he had missed a court date for a previous crime, and (3) . . . fled from police to evade capture — and a return to court to face the consequences." (Doc. 16 at 17). Petitioner claims that, absent these comments, there's a reasonable likelihood the outcome of the trial would have been different. (Doc. 16 at 17).

Petitioner raised this claim as claim four in his second amended Rule 3.850 motion. (Doc. 18-1 at 1077–78). After holding an evidentiary hearing, the trial court orally denied the claim:

> With regard to count four, I accept Ms. Shapiro's testimony that there is an admission by Mr. Charles in the interview that he was running from the police in the location at the time, and that he explained he thought he had an outstanding warrant, that they discussed those issues, and as a matter of trial strategy, they decided to explain his presence in the general location and his conduct in that regard in that fashion.
>
> I find nothing ineffective or deficient in their performance in that regard.

(Doc. 18-1 at 383–39). The Fifth DCA affirmed the denial, *per curiam*. (Doc. 18-1 at 1748–49).

The state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts. It is well settled that tactical or strategic decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).

At the evidentiary hearing, Ms. Shapiro, Petitioner's trial counsel, testified as follows regarding this issue:

> We discussed [the decision to mention the open warrant during opening statement] because the state was

19

going to play the interview of Mr. Pierre Charles after he was arrested, and in that interview he was talking about why he was in that area, why he ran from the cops. And out strategy was to say that he was running because he thought he had a warrant, he thought he had missed court, not that he had, and that's why he ran, just based on all the circumstances that were going on in the community, in the new that — at that time.

And we — I went ahead and mentioned to the jury that that is why, is because he was going to be explaining that in that interview.

(Doc. 18-1 at 797). Counsel further testified that she actually had a conversation about this strategy with Petitioner during trial preparation and that he agreed with her approach. (Doc. 18-1 at 797–98).

The post-conviction court credited trial counsel's testimony on this issue, which is a decision the Court presumes is correct. Petitioner presents nothing to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Given that counsel described a clear strategy of raising the issue of Petitioner's criminal background first, before the State had the opportunity to do so by playing the recording of Petitioner's interview, and given Petitioner's

agreement with that strategy, Petitioner has not demonstrated that counsel erred. Accordingly, as he has not demonstrated the ineffective assistance of counsel under *Strickland*, Ground Four is denied.

    *3. Ground Five*

In Ground Five, Petitioner contends that counsel's performance was deficient because she failed to fulfill a promise, made during her opening statement, to introduce the video of Petitioner's interview. (Doc. 16 at 17–18). Petitioner contends that counsel's opening statement was "the functional equivalent of a guilty plea" and constituted " 'post-hoc' speculation." (Doc. 16 at 21). He also asserts that counsel's "performance [during the opening statement] failed to subject the prosecution's case to meaningful adversarial testing." (Doc. 16 at 21). Petitioner claims that, but for counsel's ineffectiveness, there is a reasonable likelihood that the outcome of the trial would have been different.

Petitioner raised this claim as the fifth claim in his second amended Rule 3.850 motion for post-conviction relief. (Doc. 18-1 at 1079–). The post-conviction court held an evidentiary hearing on this claim, at which counsel testified as follows:

> Q    . . . You said there was this interview that the State of Florida had?
>
> A    Yes.

Q      And the State of Florida — you thought the [S]tate of Florida was intending on introducing?

A      That is what I was told by the state attorney, Ms. Coln[,] at the time.

Q      And was that video introduced at trial?

A      No.

Q      Did you believe that interview could be introduced by you through your defense?

A      I — no. But if we did, if I had him testify about it, his felony convictions could have been brought up.

Q      So was that a strategic decision?

A      Yes.

(Doc. 18-1 at 799–800).

The post-conviction court denied the claim and explained:

In Ground Five, Defendant alleges that trial counsel rendered ineffective assistance by not introducing evidence mentioned during opening statements. Specifically, he refers to footage of [his] interview with police and claims that, had the video been shown or had Defendant testified, a viable defense would have been presented.

At the evidentiary hearing, trial counsel testified that she brought up the interview during opening statement because the State had said that they were going to play the video. In the interview, Defendant explained the reasons that he was in the area and why he ran from the police. He told the police that he thought he had a warrant and had missed court. It was the defense's

strategy to say that he was running because of those beliefs. Trial counsel and Defendant discussed the strategy and Defendant was in agreement with that approach. Trial counsel felt it was a decent strategy even if the video was not played because it was in the minds of the jurors that there was an interview of Defendant explaining why he was there and that he was not involved in the commission of the crime. Trial counsel did not introduce the video or anything to that effect because then the State would have been able to bring up his prior felony convictions. His convictions could also have been brought up by the State if Defendant had testified. Trial counsel informed Defendant of the positives and negatives about testifying and advised him not to testify. However, she told him that it was his decision and he chose not to testify.

This Court finds that trial counsel made a reasonable, strategic decision and she was not ineffective for failing to present evidence of the video or Defendant's testimony, which would have allowed the jury to hear negative information about Defendant. In addition, Defendant made the decision not to testify and knew that it was his decision to make. As such, this claim is denied.

(Doc. 18-1 at 1751–52 (internal case citation omitted)). The Fifth DCA affirmed the denial, *per curiam*. (Doc. 18-1 at 1799).

The state court's decision was not contrary to, or an unreasonable application of, federal law or based on an unreasonable determination of the facts.

Counsel testified that she was informed by the prosecution that the video would be introduced as evidence. The post-conviction court credited that testimony, which is a decision the Court presumes is correct. Petitioner presents

nothing to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C.

§ 2254(e)(1). Thus, because counsel believed that the incriminating video would be

played, she did not err in mentioning it and addressing it according to the

agreed-upon strategy[7] in her opening statement. Moreover, although the State

ultimately did not introduce the video of Petitioner's interview into evidence,

counsel did not err by failing to introduce it later as part of the defense's case. As

she noted, had she done so through Petitioner's testimony, it would have opened

the door for introduction of evidence of Petitioner's criminal background.

Additionally, Petitioner contends that counsel's opening statement was "the

functional equivalent of a guilty plea" and constituted " 'post-hoc' speculation."

(Doc. 16 at 21). He also asserts that counsel's "performance [during the opening

statement] failed to subject the prosecution's case to meaningful adversarial

testing." (Doc. 16 at 21). However, Petitioner did not raise these arguments before

the post-conviction court or on appeal of the post-conviction court's denial.

(Doc. 18-1 at 1079–80, 1763–68). Thus, Petitioner procedurally defaulted them. *See,*

*e.g.*, *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("[T]he

prohibition against raising nonexhausted claims in federal court extends not only

---

[7] As explained above with regard to Ground Four, counsel testified to her strategy regarding the
recorded interview and Petitioner's agreement with that strategy; the post-conviction court
credited counsel's testimony; Petitioner has not rebutted the presumption that the post-
conviction court's credibility finding was correct; and trial counsel's strategy regarding the
interview and Petitioner's criminal background does not constitute ineffective assistance of
counsel.

to broad legal theories of relief, but also to the specific assertions of fact that might
support relief."). As he does not assert cause and prejudice or the fundamental
miscarriage of justice to overcome the defaults, the arguments are procedurally
barred by federal habeas review. *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

Accordingly, Ground Five is denied.

### 4. *Ground Nine*

In Ground Nine, Petitioner contends that counsel erred by "failing to advise
[him] that testifying to certain alleged facts would have been 'in his best interest.'"
(Doc. 16 at 32). Petitioner claims that his testimony "would have included
numerous facts that would have established 'a viable defense.'" (Doc. 16 at 32).
Petitioner contends that counsel incorrectly advised him "that if he took the stand,
the State would be able to present to the jury the details of his extensive criminal
record" rather than simply the existence and number of his prior convictions.
(Doc. 16 at 33). He also claims that if the State had introduced the video of his
police interview, and if he testified, he could have "rebut[ted] the interview" with
his testimony. (Doc. 16 at 33).

Petitioner raised this claim as the ninth ground in his second amended
Rule 3.850 motion for post-conviction relief. (Doc. 18-1 at 1088–90). An evidentiary
hearing was held, during which Petitioner testified, "I feel like she could have put
me on the stand to at least testify or at least — we would at least have an alibi why

25

I was . . . in that area." (Doc. 18-1 at 792). Petitioner did not explain what the alleged alibi was. (Doc. 18-1 at 792).

Counsel also testified at the evidentiary hearing. She explained:

> I tell my clients that it's ultimately their decision, but I give them advice based on — I talk about before we go to trial that it's going to be their decision. I like to advise them after the trial progresses to see what comes out, whether I recommend that they testify, if we definitely need them.

> If they do have prior felony convictions, I usually advise them not to [testify] unless it's necessary that we need to get something out that has not gotten out in trial.

(Doc. 18-1 at 798). Counsel explained that she discussed the decision whether or not to testify with Petitioner "multiple times" and she advised him regarding the positives and negatives if he chose to testify, including that the jury would find out he had prior felony convictions. (Doc. 18-1 at 798–99, 814). She advised him it was ultimately his decision whether or not to testify. (Doc. 18-1 at 799).

The post-conviction orally denied the claim at the conclusion of the evidentiary hearing:

> With regard to your testimony at trial, it's your decision. You knew it was your decision to make. You made the decision not to testify. Whether it was a good decision or bad decision at this point in time, I don't know.

> I think the fact that the state was not able to get out your conviction probably assisted in the defense. Your

> testimony probably would not have aided to [sic] the
> defense, other than perhaps an alibi in that regard.
>
>     And so I do not see where your trial counsel was
> any way deficient in their performance in allowing you
> to testify under — or allowing you to invoke your right
> not to testify under these circumstances. In fact, I think
> they were correct, if they did, and I believe they did
> advise you not to testify.

(Doc. 18-1 at 837). The Fifth DCA affirmed the denial, *per curiam*. (Doc. 18-1
at 1748).

The state court's decision was not contrary to, or an unreasonable
application of, federal law or based on an unreasonable determination of the facts.

First, Petitioner contends that counsel incorrectly advised him "that if he
took the stand, the State would be able to present to the jury the details of his
extensive criminal record" rather than simply the existence and number of his
prior convictions. (Doc. 16 at 33). However, Petitioner did not assert this argument
before the post-conviction court. (Doc. 18-1 at 1088–90). Nor did he assert it on
appeal. (Doc. 18-1 at 1684–86). Therefore, he procedurally defaulted the argument.
*See, e.g.*, *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). As he
does not assert cause and prejudice or the fundamental miscarriage of justice to
overcome the default, the argument is barred by federal habeas review. *Smith v.
Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

As to the remainder of his claim — essentially that counsel should have advised him to testify — the post-conviction court reasonably concluded that counsel did not err and that Petitioner did not suffer prejudice. During opening statement, counsel told the jury: "He thought he missed a court date. He thought he had a warrant, even though he did not." (Doc. 18-1 at 327). This statement does not inform the jury that Petitioner had ever been convicted of a felony. Had Petitioner testified, the State would have been able to elicit certain information about his felony criminal history on cross-examination, which would have been a detriment to the defense. Thus, it was reasonable for counsel to advise Petitioner not to testify.

Accordingly, Petitioner has not shown counsel was ineffective, and Ground Nine is denied.

## IV.  **Certificate of Appealability**

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds

28

without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not shown that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability and leave to proceed *in forma pauperis*.

V.  **Conclusion**

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.  The Amended Petition for Writ of Habeas Corpus (Doc. 16) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.  Petitioner is **DENIED** a Certificate of Appealability and leave to proceed *in forma pauperis*.

3. The Clerk of the Court is directed to enter judgment accordingly and

    **CLOSE** this case.

    **DONE** and **ORDERED** in Orlando, Florida on October 12, 2023.


                        PAUL G. BYRON
               UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of Record
Unrepresented Party

30